AO 91 (rev.11/11) Criminal Complaint        AUTHORIZED AND APPROVED DATE: Mark Stoneman, AUSA March 25, 2021

# United States District Court
## for the

_____WESTERN_____ DISTRICT OF _____OKLAHOMA_____

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No: M-21-203-STE |
| Shaun Michael Bosse, ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 23, 2010 in the county of McClain, in Indian Country within the Western District of Oklahoma, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1111(a) | First-Degree Premeditated Murder/First-Degree Felony Murder |
| 18 U.S.C. § 1201(a)(2) | Kidnapping Resulting in Death |
| 18 U.S.C. § 1111(a) | First-Degree Felony Murder |
| 18 U.S.C. § 1111(a) | First-Degree Felony Murder |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Charles W. Thumann, Federal Bureau of Investigation, which is incorporated and made a part hereof by reference.

☒ Continued on the attached sheet.

_____
Complainant's signature
Charles W. Thumann
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: **Mar 30, 2021**

_____
Judge's signature

City and State: Lawton, Oklahoma

Shon T. Erwin, U.S. Magistrate Judge

# AFFIDAVIT

I, Charles W. Thumann, a Special Agent of the Federal Bureau of Investigation (FBI), Oklahoma City Division, being duly sworn, state:

## AFFIANT'S EXPERIENCE

1. I have been employed as a Special Agent (SA) with the FBI since July 2004 and have been assigned to the Oklahoma City Division of the FBI for approximately 11 years. During the past 16 years, I have conducted a wide variety of investigations, including cases involving violent crimes in Indian country.

## PURPOSE OF AFFIDAVIT

2. This Affidavit is submitted in support of a complaint and arrest warrant for **Shaun Michael BOSSE (BOSSE)** for the following offenses committed in Indian country (Title 18, United States Code, Section 1152): first-degree premeditated murder of C.H. (a minor child), in violation of Title 18, United States Code, Section 1111(a); first-degree felony murder of C.H. in the perpetration of arson and robbery, in violation of Title 18, United States Code, Sections 1111(a), 81, and 2111; kidnapping resulting in the death of C.H., in violation of Title 18, United States Code, Section 1201(a)(2); and first-degree felony murders of C.G. (a minor child) and Katrina Griffin in the perpetration of robbery, in violation of Title 18, United States Code, Sections 1111(a), and 2111.  Since this Affidavit is being submitted for the limited purpose of securing a criminal complaint and an arrest warrant, I have not included each and every fact known to me concerning this

1

investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a criminal complaint and an arrest warrant.

## FACTS AND CIRCUMSTANCES

3. I am aware of the information set forth below through conversations with other law enforcement officers, review of reports and affidavits prepared by other law enforcement officers, and review of documents from related state court proceedings. This case was originally investigated by the McClain County Sheriff's Office (MCSO) and the Oklahoma State Bureau of Investigation (OSBI), with assistance from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and other agencies.

4. MCSO Deputy Kent Cunningham was dispatched to Katrina Griffin's residence (a mobile home located at 15734 212th Street in McClain County, Oklahoma, within the boundaries of the Chickasaw Nation, in the Western District of Oklahoma) on the night of July 22, 2010. Katrina Griffin filed a larceny report regarding numerous PlayStation 2 video games that were missing from her residence. Katrina Griffin did not report any other missing or stolen items such as televisions, computers, or the PlayStation 2 system itself, to Deputy Cunningham that night. Deputy Cunningham arrived at Katrina Griffin's residence at approximately 11:52 p.m. on July 22, 2010, and left the residence at approximately 12:07 am on July 23, 2010. **BOSSE** was present at the residence while Deputy Cunningham interviewed Katrina Griffin regarding the missing video games. Deputy Cunningham recalled that **BOSSE** was wearing a short-sleeve shirt and jeans at Katrina Griffin's residence.

2

5. On July 23, 2010, at approximately 9:00 a.m., firefighters and law enforcement officers responded to a fire at Katrina Griffin's residence. The mobile home was heavily damaged by the fire. The bodies of Katrina Griffin, age 24, and her children, C.G., age 8, and C.H., age 6, were located inside the residence. The bodies of Katrina Griffin and C.G. were found on the floor in the master bedroom of the residence. The body of C.H. was found in the master bedroom closet. A chair had been put under the outside knob of the closet door, preventing C.H. from opening it from the inside. Investigators noted there was a hole about the size of a fist in the door to the master bedroom. The fire marshal concluded the hole was created prior to the fire, due to the scorching patterns around the hole. Ginger Griffin, the stepmother of Katrina Griffin reported visiting her daughter the night before the fire. Ginger Griffin said she did not see a hole in the bedroom door the night before the fire and believes she would have seen a hole had one been there. Ginger Griffin remembers seeing Katrina Griffin using her laptop computer that night. After the fire, Johnny Griffin, the father of Katrina Griffin, reported that additional items were missing from Katrina Griffin's residence including a 32-inch flat screen television, a 19-inch television, and a laptop computer.

6. The Oklahoma Office of the Chief Medical Examiner later determined the causes of death for the three victims as follows: Katrina Griffin – multiple sharp force trauma; C.G.- multiple stab wounds; C.H. - smoke inhalation and thermal injury. The Medical Examiner also noted that each of the victims had sustained blunt force trauma to the head. C.H. had soot in her airways, esophagus, and stomach. According to the Medical Examiner, the soot in C.H.'s stomach indicated she tried to cough out the smoke and

swallowed it. According to the Medical Examiner, C.H. could not have done this if she were unconscious.

7. On July 23, 2010, at approximately 2:30 p.m., MCSO Detective Dan Huff telephoned **BOSSE** to arrange an interview. **BOSSE** told Detective Huff that he was at the Oklahoma City Community College (OCCC) library in Oklahoma City. **BOSSE** agreed to come to the MCSO in Purcell, Oklahoma, to meet with Detective Huff. At approximately 4:00 p.m., **BOSSE** arrived at the MCSO where he was interviewed by Detective Huff. During the interview, **BOSSE** advised that he had been dating Katrina Griffin for approximately two weeks. **BOSSE** stated that he spent the evening of July 22, 2010, with Katrina Griffin at her residence and left the residence between 1:00 a.m. and 1:30 a.m. on July 23, 2010. When asked if he was the last one to see Katrina Griffin, C.G., and C.H. alive, **BOSSE** nodded in the affirmative but did not respond verbally. Detective Huff noticed a scratch, approximately six to seven inches long, on the inside of **BOSSE's** right arm. This wound was consistent with a defensive wound that would be sustained in a physical altercation. Detective Huff also observed that **BOSSE's** knuckles were red and slightly swollen. These injuries were consistent with injuries that would be sustained if **BOSSE** had punched something, such as the master bedroom door at Katrina Griffin's residence.

8. MCSO Detective David Tompkins observed an Acer laptop, a PlayStation 2 video gaming system, and several DVDs inside **BOSSE's** red Chevy Silverado pick-up truck, which was parked near the MCSO. One of the DVD containers had Katrina Griffin's initials ("KRG") on the front. Detective Tompkins took photos of these items, with

4

BOSSE's consent. Photos of the laptop, video gaming system, and the DVD bearing Katrina Griffin's initials were later shown to Ginger Griffin. Ginger Griffin identified these items as property of Katrina Griffin. Detective Tompkins observed what appeared to be bloodstains on the athletic shoes **BOSSE** was wearing. **BOSSE** was released after the interview was conducted and the photos were taken.

9. At approximately 8:00 p.m. on July 23, 2010, OSBI SAs Marvin Akers and Tommy Johnson located **BOSSE** at his residence in Oklahoma City. **BOSSE** provided consent for the agents to search his red Chevy Silverado pick-up truck. The laptop, PlayStation 2 video gaming system, and DVDs previously observed by Detective Tompkins were no longer in the vehicle. When asked about those items, **BOSSE** claimed he had returned the laptop to a male named "Josh." **BOSSE** said he had only known "Josh" for about three weeks, but did not know how to find him. **BOSSE** said that "Josh" telephoned him the previous day and arranged to meet him at the Love's store on July 23, 2010, so that **BOSSE** could return the laptop.

10. SA Akers asked **BOSSE** about his activities on July 23, 2010. **BOSSE** stated that he went to check on work at a temporary work center, went to OCCC, then to a Wal-Mart located at I-240 and Santa Fe in Oklahoma City to get a phone and a haircut, then returned to OCCC. **BOSSE** said he was then contacted by the MCSO and left to meet with MCSO deputies. The agents located a receipt from the Dollar General store on NW 50th Street in Oklahoma City for a transaction that occurred on July 23, 2010 at 10:53 a.m. When questioned about the receipt, **BOSSE** said he had forgotten about his trip to the Dollar General. **BOSSE** was asked if he had gone to any other locations that day. **BOSSE**

5

replied, "No."

11. SA Akers found **BOSSE's** wallet in **BOSSE's** Chevy Silverado. Inside the wallet were the following items: a pawn ticket from 39th Street Pawn Shop, 5700 NW 39th Expressway, Oklahoma City, Oklahoma, reflecting that **BOSSE** pawned a 32-inch Sanyo LCD television on July 23, 2010, at 10:37 a.m., for $75.00; a pawn ticket from Extra Cash Pawn, 2204 W. Hefner, Village, Oklahoma, reflecting that **BOSSE** pawned a 19-inch Philips television and a Magnavox DVD/VHS combo on July 23, 2010, at 11:37 a.m., for $70.00. These televisions were consistent with items missing from Katrina Griffin's residence, as described by Johnny Griffin. When SA Akers questioned him regarding the pawn tickets, **BOSSE** said he did not know what SA Akers was talking about.

12. At approximately 8:54 p.m. on July 23, 2010, OSBI agents arrested **BOSSE** for first degree murder and first degree arson in violation of the laws of the state of Oklahoma. **BOSSE** was then transported to the McClain County Jail, where MCSO detectives seized his clothing, including the two athletic shoes with apparent bloodstains.

13. Law enforcement officers conducted a search of pawn brokers in the Oklahoma City for additional evidence related to this case. During this search, two televisions, one of which included a DVD/VCR combination, and one Nintendo Wii gaming system were located. Latent fingerprints of Katrina Griffin were located on these items. Additionally, 32 DVDs were recovered at Adrian's Pawn, 2129 SW 44th Street in Oklahoma City. 32 of these DVDs had the initials "KRG" on them. Many of these items were recovered and submitted to the OSBI laboratory for fingerprint analysis. Latent fingerprints of Katrina Griffin were found on items pawned at six of the seven pawnshops in the Oklahoma City

area. BOSSE had pawned more than one hundred of Katrina Griffin's possessions at seven different Oklahoma City Pawnshops the morning of July 23, 2010, while Katrina Griffin's home was still burning. In addition to Katrina Griffin's initials and fingerprints, officers were able to connect the pawned items to Katrina Griffin by serial numbers and identification through witnesses.

14. On July 27, 2010, law enforcement officers served a search warrant at **BOSSE's** residence, 8800 S. Drexel Avenue, Apartment 2204, Oklahoma City, Oklahoma. **BOSSE** resided at this apartment with his mother. During the search, OSBI agents recovered a pair of blue jeans with possible blood from **BOSSE's** bedroom closet. A presumptive blood test was conducted on the jeans and the results were positive. Several DVD's, including a box set of the *Nightmare on Elm Street* series, were located on the bed in **BOSSE's** bedroom. Family members of Katrina Griffin later identified the DVDs as property of Katrina Griffin.

15. The blue jeans recovered from **BOSSE's** apartment and the two athletic shoes recovered from **BOSSE** when he was booked into jail were submitted to the OSBI lab for analysis. Serological testing was conducted and blood was detected on each of the items. A cutting from the blue jeans and swabs from each of the shoes were then submitted for deoxyribonucleic acid (DNA) analysis. Known DNA samples from **BOSSE**, Katrina Griffin, C.G., and C.H. were also submitted. Analysis of this evidence yielded the following results:

    a)    The DNA profile from the cutting of the blue jeans appeared to be a mixture. The known samples of **BOSSE** and C.H. could not be excluded as

7

potential contributors to the mixture. The probability of selecting an unrelated individual at random from the population who could be a contributor to the mixture is approximately one in 2.19 million in Caucasians, one in 14.5 million in African Americans, and one in 4.74 million in Southwest Hispanics. The known samples of Katrina Griffin and C.G. were excluded as potential contributors to the mixture.

  b) The DNA profile from the swab from the right shoe appeared to be a mixture that can be separated into a major component and a minor component. The DNA profile from the major component of the mixture *matched* the DNA profile obtained from the known sample of C.H. Assuming a single donor, the probability of selecting an unrelated individual at random from the population having this DNA profile is approximately one in 4.68 quadrillion in Caucasians, one in 34.8 quadrillion in African Americans, and one in 18.2 quadrillion in Southwest Hispanics. The known samples of **BOSSE**, Katrina Griffin, and C.G. were excluded as to potential donors to the major component of the mixture. With regard to the minor component of the mixture, the known samples from **BOSSE** and C.G. could not be excluded. The probability of selecting an unrelated individual at random from the population that could be a contributor to the minor component is approximately one in four in Caucasians, one in five in African Americans, and one in six in Southwest Hispanics. The known samples of Katrina Griffin and C.H. were excluded as potential contributors to the minor component.

  c) The DNA profile from the swab from the left shoe appeared to be a mixture. The known sample of Katrina Griffin could not be excluded as a potential

8

contributor to the mixture. The probability of selecting an unrelated individual at random from the population who could be a contributor to the mixture is approximately one in 124 thousand in Caucasians one in 7.59 million in African Americans, and one in 415 thousand in Southwest Hispanics. The known samples of **BOSSE**, C.G., and C.H. were excluded as potential contributors to the mixture.

16. The ATF conducted an investigation regarding the fire that occurred at 15734 212th Street in McClain County, Oklahoma, on July 23, 2010. The ATF concluded that the fire was set deliberately and that the point of origin was a sofa in the living room of the mobile home. The ATF performed five full-scale experiments at the ATF Fire Research Laboratory, using a single-wide mobile home of the same make and year as Katrina Griffin's mobile home, essentially recreating the scene of the fire. Based on the experiments, the following conclusions were reached:

 a)  It is possible that a fire in the mobile home could burn for four hours, and still be burning before being noticed by a neighbor.

 b)  During a fire originating on the sofa in the living room, the likely time to incapacitation for a young child located in the closet of the master bedroom is between 16 and 50 minutes.

17. On August 6, 2010, the District Attorney for McClain County charged **BOSSE** in McClain County District Court (case number CF-2010-213) with three counts of first-degree murder in violation of Title 21, Oklahoma Statutes, Section 701.7(A), and one count of first-degree arson in violation of Title 21, Oklahoma Statutes, Section 1401(A). **BOSSE** was incarcerated at the McClain County Jail while awaiting trial. On June 26, 2011,

**BOSSE** escaped from the McClain County Jail. During the escape, **BOSSE** overpowered two detention officers and stole a vehicle. Later that day, **BOSSE** was apprehended in Blanchard, Oklahoma, by members of the United States Marshals Fugitive Task Force.

18. This Court has jurisdiction pursuant to Title 18, United States Code, Section 1152, because Katrina Griffin, C.G., and C.H. were enrolled members of the Chickasaw Nation who had Indian blood, **BOSSE** is a non-Indian, and the offense occurred in McClain County, Oklahoma, within the boundaries of the Chickasaw Nation in the Western District of Oklahoma.

19. Based upon my training and experience, and the facts and circumstances described above, I believe probable cause exists to support a criminal complaint and arrest warrant for **Shaun Michael BOSSE** for violations of Title 18, United States Code, Sections 1111(a), and 1201(a)(2).

Further Your Affiant sayeth not.

CHARLES W. THUMANN
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this the 30th day of March, 2021, at Lawton, Oklahoma.

SHON T. ERWIN
United States Magistrate Judge

10